Yes, your honor. All right, and we're ready to proceed. This is United States v. Graham. Mr. Stevenson, you may proceed. Good morning, your honors. May it please the court, Adam Stevenson, on behalf of the appellant, Erin Graham. Today, we're here to discuss the confrontation clause violation and attempt to remedy that violation on behalf of the district court as a part of Mr. Graham's trial. I'm happy this morning to discuss the contours of the violation, but unless there are questions to begin us off on that topic this morning, I'd like to start with regard to the appropriateness of the curative instruction in this case. With regard to the curative instruction that the district court provides... I do think... This is Judge Easterbrook. I'm appearing as a disembodied voice today. I do think you're getting ahead of yourself. You need, if you're going to make a confrontation clause argument, to establish that the statements were testimonial, and I wish you'd spend some time on that question. Yes, your honor, and I'm happy to do so. And the district court did find and did state that the arguments... Excuse me, that the statements from the video were testimonial, and in fact, the exact phrasing the court used... Counsel, you need to show that to me, not just to the district judge. Yes, your honor, and the test for a testimonial statement is whether an objective witness would believe reasonable that the statements would be used in a later prosecution under Hammond, Davis, Bryant. And in this case, similar to, for example, the circumstances in Hammond, these statements were made to responding law enforcement officers. The parties, Mr. Graham and Ms. Moore, had been separated. In fact, Ms. Moore had been restrained for the majority of the statements. And as even Officer Wass, the government's own witness, testified to, the statements were made to the officers and about Mr. Graham, using the pronoun he to refer to Mr. Graham. The statements were alleging criminal activity, that being the kidnapping of both Ms. Moore and a 19-year-old unidentified alleged victim, as well as commercial sexual activity. And in fact, referring to Mr. Graham as a pimp. There was no... Mr. Stevenson, why would one under the circumstances view these statements as designed for use at trial, rather than designed for use by the police on the scene? Yes, Your Honor. And that is analogous to, or speaks to the sort of ongoing emergency aspect of Hammond and Davis. And that aspect is not dispositive, but with regard to whether it was for use of the officers at the scene or for later prosecution, those were statements made to law enforcement officers. In the government's brief, it indicates that the purpose, or perhaps the subjective purpose of Ms. Moore was to essentially get back at Mr. Graham. But the way in which to get back at Mr. Graham was to have him arrested and prosecuted for the offense. They were allegations of criminal conduct on behalf of Mr. Graham, made to law enforcement officers. And a reasonably objective witness would believe that those statements could, and in fact, would be used for prosecution at a later crime. They were not relating to the specific response or instigation that led officers to arrive, but were rather related to sort of concurrent or other criminal activity allegedly on behalf of Mr. Graham. But specifically with regard to the instruction in this case... raised at trial. I noticed you didn't argue the hearsay rule in your opening brief. You reserved that to your reply brief. So I'm inclined to think that's too late anyway. But I wonder whether a hearsay objection was made at trial at all. Yes, Your Honor. The defense counsel did, as a part of its confrontation clause objection, did note that it was both a confrontation clause violation because the statements were testimonial and Ms. Moore was not being called, but also indicated that even if the district court did not so find that these statements were hearsay, and the district court did agree with that statement, but then eventually ruled in favor of it being an inappropriate testimonial statement. Judge Peterson said on the record that the hearsay, that the very brief hearsay objection was made at the wrong time and too late. And I looked in your appellate briefs for any argument contrary to that and didn't find it. Am I missing something? So on the morning of the fourth day, so on 4A, page seven, the appendix A-17, that is when the court did indicate that they were hearsay. It was... the objections, especially with regard to the confrontation clause, were made after the presentation of evidence in part because the government had at all times indicated, or at least not indicated to the opposite, that Ms. Moore was going to be called to testify, going in so far as to obtain immunity for Ms. Moore. Counsel, counsel, can I ask my... let me ask my question again. Judge Peterson thought the hearsay objection was made inadequately and too late. The question I asked was whether your briefs in the court of appeals took issue with that conclusion. I looked through your briefs for that purpose and didn't find anything taking issue with that conclusion. My question is, did I miss something in your briefs? Your Honor, we did not, I believe specifically, or I cannot at this moment, and I will be happy to un-rebuttal if I am able to find it. I do not recall specifically referring to that point. We did note that testimonial statements did need to be, for the truth of the matter, asserted. We did speak to the government's discussion of the alleged context exception to a hearsay argument. We did discuss those. But again, the finding that we are addressing here is that the district court found that the statements for confrontation or confrontation clause violations attempted to remedy with an instruction, which we would argue and argued in our briefs is inappropriate in general, given the context of the statements and the relationship of the parties. But even if it were appropriate or could have been cured via instruction, the problems with this instruction are numerous, both the fact that the instruction was significantly delayed about a day or so into the trial, during which other alleged victims testified. It didn't refer to the statements or the repeated statements from Officer Wass on the stand and also was not reiterated at the conclusion of the evidence in the other jury instructions. Because the district court did acknowledge a confrontation clause violation, did indicate that it was hearsay statements, did attempt to cure what would appear to be an improper or something that could not be we would ask the courts to vacate and remand and I will remain or I will reserve the remaining of my time for rebuttal. Thank you. That's fine. Thank you very much. Ms. Hecker. Your honors, may it please the court, Elizabeth Hecker for the United States. Your honors, this court should affirm Mr. Graham's conviction. First, there was no confrontation clause violation because none of patients more statements on the video were of her statements was not to create a record for trial. But the court need not even reach this issue because any error was harmless beyond a reasonable doubt. First, the indisputably admissible evidence was overwhelming in this case. Sundariya Harwell testified about how Graham prostituted her for a year and a half and took all of her money. She testified about the way he manipulated her, promising her a stable place to live, the ability to go to school, about how every time she left him, he found her and manipulated her into coming back. He tracked her with her phone about how he choked her and patients more on a regular basis. And when he found out that she intended to escape, he choked her into unconsciousness. Crystal Jaskowski testified that he used the fact that she was a mother to manipulate her, that he posted her on Backpage before she even agreed to engage in commercial sex, and that once when she didn't want to go on a date, Mr. Graham shoved her against a wall so hard that she hit her head on a television set. She went on the date out of fear. Kelsey Lannert testified that Graham also used her children against her, that he plied her with drugs to kind of things that he did to patients in Cinderia. She knew what could happen if she told him no. Cynthia Salinka testified that Graham approached her and he knew her to be a prostitute and told her that he wanted her to work for him. And when she refused, patients more assaulted her. This evidence overwhelms anything Ms. Moore said in that video. And if that weren't enough, the court also gave a curative instruction that told the jury to completely disregard everything that Ms. Moore said in the video. This court's precedent is clear that there is a strong presumption that the jury will follow a curative instruction unless there is an overwhelming probability that the jury will be unable to follow it and a strong likelihood that the effect of the evidence would be devastating to the defendant. Now returning to the first point, Ms. Moore's statements were not testimonial because they were not offered for the truth of the matter asserted and because their primary purpose was not to create a record for trial. On the first point, most of her statements had nothing to do with the allegations that the government was trying to prove here. The government was not trying to prove that Mr. Graham had kidnapped anyone or had taken anyone from New York. In fact, the government made a point in kidnapping here. Nor was the government trying to prove that Mr. Graham had pimped Ms. Moore herself. As for her statement that Mr. Graham was prostituting women, this was never contested. He admitted it. Mr. Graham himself testified that he recruited women, he posted them on Backpage, he drove them to dates, he solicited customers, and he kept a share of their earnings. That, your honors, is prostituting women. He admitted that. These statements were useful for one thing only, to show why Sundaria believed that she was stuck, that the police were not going to help her. Indeed, the government questioned Sundaria on her direct, not about the statements themselves, but about their effect on her state of mind. And the government identified the effect on Sundaria's state of mind as the purpose for showing the videos immediately when the defense brought up the confrontation clause issue. This was no post hoc justification. Ms. Hecker, is it clear that she actually heard what, um, what Moore was, what Patience Moore was screaming down in the parking lot? Your honor, the government, the government never, I'm sorry, your honor, the government never actually asked her about the statements themselves because, again, the purpose of the government was to get out her state of mind. The content of the statements was not important. But it is a fair inference to make because we heard on the video, when the video was being taken upstairs and the door was open and Sundaria was in the room, the video itself, the body cam captured what the state, what statements Ms. Moore was saying. So it's a fair inference that Sundaria did hear them. But there was no testimony because neither the prosecution nor the defense ever specifically asked her about the content of the statements. Well, then, then the theory that you're invoking, that the statements were admissible to show the effect on the listener, isn't in play here because it's not clear that, um, the listener that you're referring to ever heard or reacted to, um, the statements that are challenged here. Your honor, it's not 100% clear from the record that she heard the specific statements. Although again, it is a fair inference for the jury to make that she did hear them. I'm sorry, your honor. Was there any argument to that effect that she must've heard because Moore was screaming her head off or something? I, it didn't seem that you were actually using that theory, um, here in any way. Your honor, we were not necessarily arguing that the government was using the statements themselves. We were merely arguing that the, the hollering and screaming that she was screaming her head off. So the effect on her, the question for the government was always the effect on Cinderia of seeing that Ms. Moore was the one carted away by police officers, not Mr. Graham. So we only got this in there for the state of mind of Cinderia. And it doesn't seem to be true with the statements that Moore was screaming her head off. I think this is a very weak theory of admissibility. Let's just assume it's, it's hearsay and move to the testimonial question. Sure. Your honor, as I said before, these statements were not testimonial. The government was not introducing them for the truth of the matter asserted because again, the government was never trying to prove that anyone had been kidnapped, that anyone had been taken from New York. And then the general statements that he was prostituting women, Mr. Graham himself testified that he was prostituting women. So these statements were simply not introduced for the truth of the matter asserted. And in any case, this was an effective curative instruction. And all that aside, your honor, we had four incredibly compelling witnesses who testified to the elements of this crime. But I do have to say, this is Judge Wood. I mean, you know, I watch the videos and it's a fraught situation while this is going on. Ms. Moore's thrashing around and screaming, but she, she wants to sick the police on, on, on Mr. Graham. She would like to see him tried and convicted. She thinks it's unfair that she's the one who's being picked on by the police. So from that point of view, why weren't they in for the truth inappropriately? Well, there weren't in for the truth, Judge Wood, because they were simply did not go to any of the If you look at the statements themselves, the content of the statements, what she said was he took me from New York. He kidnapped me from New York. Right. And kidnapped means coercion, force fraud. I mean, I guess his theory was as long as I was doing all this prostitution work with consensual people, everything was fine, or at least it doesn't fall within this charge. But she's showing coercion and force, isn't she? Your Honor, this is not a kidnapping case and the government was never trying to prove kidnapping. The testimony from Sendaria that the government brought out from Sendaria was that she met him at a mall kiosk and she went very willingly with him. The government brought out from all the defendants how they met Mr. Graham and none of them were involved kidnapping. And indeed, the government said, I guess you're answering this more narrowly than I'm thinking of it as that the evidence that she's screaming out or the statements that she's screaming out would go to the existence of force or coercion in the actual, quote, dates. Your Honor, they would if the government had been trying to prove that. But the government said in its closing statement, there was no kidnapping here. The women came and went as they wanted to. The government specifically said, this is not a kidnapping case. There was no kidnapping. So therefore, a testimonial statement must go to what the government is trying to prove. And these statements simply do not meet the bill on that. I understand what you're saying about kidnapping, but you're certainly not saying the government concedes that it failed to prove trafficking by force, fraud or coercion. Those were the charges. That's correct, Your Honor. And the testimony from the women themselves, from the women who testified was firsthand knowledge. They proved those things. They proved how every time they got away, Sendaria testified as to every time she got away, he found her. He tracked her using her cell phone. He manipulated her into coming back. The government never was trying to prove that he held her against her will. She was not allowed to go anywhere, anything like that. This was about fraud and that he promised her schooling, a place to live. And every time she left, he went and found her. He harassed her grandmother. He harassed her father. He brought her back by means of coercion. And that is not kidnapping. That is not forcing her into a car. It is coercion to manipulate someone psychologically into coming back. He did the same thing with Krystal Jaskowski and Kelsey Lannert. He said, you need to do this for your children. If you were a good mother, you would do that. He did that through drugs with Kelsey Lannert. He wouldn't give her cocaine unless she worked. He told her, you need this. You need to do this for your children. You need to do this for drugs. That is coercion. And that is fraud, Your Honor. This was not about kidnapping ever. And the government made that clear the entire time. All right, Ms. Hecker, your time has expired. Thank you very much. Yes, Your Honors. Two points quickly on rebuttal to Chief Judge Sykes' point with regard to the admissibility of these statements and their purpose. It's important to, again, remember, Sundari was not asked if she heard the statements. And Officer Wass was essentially asked to repeat the statements to clarify them. There was no orienting questions, no questions that demonstrated context or the like. And this is similar to cases, Walker, Montez, where the government has efforted to expand context as an exception to the hearsay rule. Also, with regard to the testimonial nature of the statements, it's important to note, as I believe Judge Wood indicated, the parties were separated. The statements were made to law enforcement officers. And again, with the presumptive or at least reasonably believed purpose to have Mr. Graham arrested and prosecuted for a criminal offense. But most importantly, with regard to the burden of harmlessness, it's the state's burden or the government's burden to prove beyond a reasonable doubt that this was harmless. And as the government noted, it indicated well at the end, after the statements, after the testimony of other people, and after the instruction, that this wasn't a kidnapping case. But what was more important is that they spent over a page of transcripts reminding the jury about the videos, going into great detail, reminding them about the disturbance that Ms. Moore created, reminding them and bringing them back to the videos after they had been instructed to disregard the statements from them. And between the instruction not speaking to Ms. Waugh, or excuse me, Officer Waugh's statements, parroting or repeating what Ms. Moore said, the fact that the government drew attention to the videos, again, at the conclusion of trial, we would ask that the court vacate Mr. Graham's conviction and remand for a new trial. Thank you, Your Honors. All right. Thank you very much. Our thanks to both counsel. The case is taken under advisement and the court is in recess.